Please all rise. Here to give you this honorable teleport for the second judicial district is now open, the Honorable George Bridges, presiding. Have a seat. Your Honor, the first case on the docket is C.I. 2-1-1-0-5-6-8, Morgan Verso, a minor. By an attorney for appearance, Kelly Verso and Nick Verso, plaintiffs' attorneys, we appeal to the Illinois Hockey Club, Inc. and the Amateur Hockey Association, Illinois, defendants' attorneys. Mr. Charles Weisshoff, arguing on behalf of Natalie, is presumed to be defendants. Yes, Your Honor. Call the case. Yes, Your Honor. I call the case. Then you could record it and start it. All right. Very well. Counsel, you may proceed. May it please the Court. Good morning, Your Honors. My name is Charlie Weisshoff. I'm counsel for Morgan Verso and her mother, Kelly Verso, who are here this morning, as well as Nick Verso, the plaintiff appellant in this case. And this appeal presents the question of whether Morgan has pled or could plead a claim of disability discrimination under the Illinois Human Rights Act against Team Illinois, a youth hockey team that is open to the public and operates from public facilities, the Seven Bridges Ice Arena in Woodbridge. The trial judge below erred when she dismissed the complaint without reasoning and ignored the plain allegations of the complaint, ignored the language of the act, including the 2007 amendments, and deviates from the persuasive reasoning of the United States Supreme Court in Martin v. PGA and all of the cases since around the country that hold that athletic organizations may not discriminate against their players. Mr. Weisshoff, you argue in your brief that the Illinois General Assembly overruled Illinois case law when they amended Section 5101A of the Illinois Human Rights Act and the definition of public accommodation. They inserted additional places, but there's nothing in the statute that would indicate that teams are covered by the statute or that membership organizations are covered, correct? No, Your Honor. What provision of the amendment covers Team Illinois? The amendments in 2007 replaced the entire definition of public accommodation, right? The old language, those cases were about particularly the phrase business facility of any kind. That language is gone, right? But it's still all places, correct? It is still places of public accommodation, and the discrimination here involves a place of public accommodation. There is no dispute that Seven Bridges Ice Arena is a gym or a facility of recreation or a place of entertainment, if like the other things in the statute. But Team Illinois itself does not qualify as a place, correct? Team Illinois could qualify as a place, Your Honor, because they're closely tied to the facility of the ice arena. That's well established in the cases we've cited in our brief, right? That when an organization is operates from, controls, access to, is closely tied to Seven Bridges, to a place of public accommodation, they themselves fall within the Act. Let me be coming in under another theory, but let me ask you sort of a special question. Is the phrase place of public accommodation expressly defined anywhere in the Act? It's defined in, yes, it is in Section 101. I see examples. I don't see it being defined anywhere. It's defined to include but not be limited to the examples, Your Honor. There's not a general definition other than the statute listing all of the places that necessarily are included. So what is your interpretation of the word place? Doesn't that refer to some kind of a building structure? Place. It doesn't say public accommodation. It says a place of public accommodation. The statute does say place, Your Honor, and the discrimination here involves a place. It involves the ice arena. Right? There may be. There's a distinction, I think, that Justice Bercow was alluding to, Team U.S., the team, the organization, and a physical place. Is anybody disputing that Seven Bridges is a place of public accommodation? No, Your Honor. It's not even an issue in this case, is it? It's not a disputed issue, but it's an important issue in this case. But we are alleging that team is an organization with a membership. It's not a physical place. Well, first, Your Honor, the Court does not need to reach the question of whether Team Illinois itself is a place of public accommodation. We think that the case law supports that conclusion, but you don't have to reach that. Right? The simplest analysis of this case that they ignore is the language where Team Illinois is a person. We know Team Illinois is a person within the statute. Right? That can't be disputed. And the person is the statute applies to, quote, any person. It's not limited to owners and operators. It's not limited to natural people. It's a person. So that's where I was trying to get at. Yes. Even if we were to define that Team USA is not a place of accommodation, there's another way to perhaps save the cause of action in the case of Suffolk Bridges, whether leasing and operating out of Suffolk Bridges. Yes, Your Honor. That's where the focus is here. Yes, Your Honor. That's the most straightforward way. You know, that's the way the Supreme Court talked about it in the Martin case. Right? They're an entity. Whether they call themselves an association or organization, which we don't agree with, but even if they were, there's no exemption in the statute. They're still a person, even if they were a membership association. Counsel, doesn't Gilbert versus, I think it's the Department of Human Rights, further supports the defendant's position here that Team Illinois is not a place of a public accommodation since it has a prescreening process that it uses for its members? That language may support defendants. They tried to cite to it, but it's bad law. It was overturned in 2007. Right? Gilbert is talking specifically about that phrase, business facility of any kind. That language is gone. There's no word facility in the statute anymore. And the entire purpose of the 2007 amendments was to overrule Gilbert and those prior cases.  Why has no Illinois reviewing court said so in the past 15 years? And, you know, the Team Illinois cites Straw versus Board of Elections. It also cites the 2016 Fourth District case. Why is that the case? Well, Your Honor, the cases they cite don't say that the amendments had no effect. Right? That's their position, is that the amendments had no effect. And that's not plausible, given the history and the language of the amendments. In fact, one of the cases, the Carwile case they cite, says directly that the 2007 amendments do change the law. And many of the other cases, when we put them out, we go through them case by case at page six of our reply brief. They don't support the conclusion. None of them say that the amendments didn't change the law. They cite old cases for non-controversial propositions, right, about the Human Rights Act follows a federal law for McDonnell-Ducklan's burden shifting, something that had nothing to do with the amendments. The Straw case is about, you know, whether ballot access falls within the statute. That has nothing to do with either before or after the amendments saying that they had no effect. The reality is there's just — I apologize. Counsel, how do you address the fact that there are several federal cases, such as the Illicit versus U.S. Hockey, the Abbott case, the Para-America Bicycle case, that hold a place of public accommodation, such as that we're talking about here, and not places of public accommodation that it seems to refute your argument that Team Illinois is a place of public accommodation? Well, I have two responses, Your Honor. First, those cases are bad law. They were overturned by Martin, right? That was from the 1996. The analysis doesn't apply anymore after Martin. You can't square that with Martin. Okay? Which says that when an organization, even if the PGA is some kind of private entity, when they're running golf tournaments on a public golf course, they can't discriminate against the spectators and they can't discriminate against the players. And it doesn't matter if there's selectivity. It doesn't matter if the players had to try out. It doesn't matter if they had to pay $3,000 to join the tour. Selectivity does not take the players outside of the act. You're right about that, but the point is you want us to declare Team USA as a place of public accommodation, the organization itself. You don't need to go there because there's a plethora of the federal cases, and that's what Martin talks about. An athletic organization may be subject to the violations if they exercise, if they lease the facility, if they exercise control over the facility. We don't need to declare them to be a place of public accommodation, do we? You do not, Your Honor. There are two ways, independent ways that Morgan has stated a claim here. The easiest and most straightforward is that Team Illinois is a person. Seven Bridges is a public accommodation. She was denied equal access, right? We have cited and we think you could also decide that Team Illinois, because of its tie to the arena, is a public accommodation, but the court doesn't need to reach that. Either way, they can't violate the law, right? They cannot exclude Morgan from the ice rink, from the hockey game as a player because of her disability. And I do want to mention the issue of prescreening was raised as to Gilbert, and I think it's not just that the intent was to overturn and change the language, but if you look at the new statute, it's clear that prescreening cannot be criteria of a public accommodation anymore, right? Because the statute lists universities. They prescreen. Social service agencies prescreen. Private schools prescreen. So that is gone. Let me ask you this. The Illinois Department of Human Rights dismissed the plaintiff's discrimination charge in February of 2021. It concluded that her claim lacked substantial evidence. In the complaint, plaintiff asserted that, quote, this is a rare case of discrimination that is documented with little factual dispute. Now, if the discrimination is documented and the facts are undisputed, why then did the department dismiss the charge? The department did not dismiss her lack of jurisdiction, and we certainly disagree with the findings of the department and presented our presentation to the investigator, which is not part of the record other than the fact that that administrative process was exhausted. We think the complaint, the allegations of the complaint, which are what matter here and now, state the claim. In her complaint, she argued that it was basically undisputed facts, but the department dismissed the case for lack of substantial evidence. We disagree with the investigator's finding. You know, they deal with what's before them and where they perceive factual disputes or not. I mean, there's many, many reasons. We do a lot of work in the Department of Human Rights and employment and other cases. There are many reasons why that finding comes out of the investigative process. We don't agree with it, and it's not relevant to the case at this point, right? That will be hearsay. And what matters for this is whether the complaint filed in court states a claim. And we think it's clear because the evidence, particularly on causation, is going to be undisputed, right? Morgan and her mother told Coach Larry Pedry about her disability and mental health, and the very next day, he said, you cannot come back, right? You can't participate or be present at any team normal activities at Severn Bridges because of your disability. And critically, I do want to flag that this is not an issue of a doctor's note, as they claim, right? The issue here is the standard. They set the illegal and unlawful standard that said Morgan and Morgan alone was singled out and held to a 100 percent participation requirement. No other player was held to that standard. And that's the reason she was excluded and why she stayed excluded. They put it in writing. That's the point of the evidence. We quote the e-mail in paragraph 40. That standard was unlawful discrimination because it treated Morgan differently than other players, other similarly situated people in whether she could go to the ice rink of Severn Bridges or play in the hockey game. Is it your position in the federal decision that Martin is on all fours with your allegations? I think the reasoning of Martin is persuasive. You know, some of the details of Martin, I'm sure you could come up with facts to distinguish them, but they're not material. The key points of Martin are, one, that the Public Accommodation Act protects not only spectators but also the players at a sports event, right? There it's the tournament. Here it's a Team Illinois hockey game, right? Both the players and the spectators are protected by the law. And second is the point about selectivity, right? It doesn't matter that there are tryouts. It doesn't matter that you have to apply. It doesn't matter that you compete to make the team. You are still within public accommodations. And that's the way it's been interpreted since then uniformly, right? The courts across this country since Martin in the last 20 years, they all hold that players are protected. That's the Youth Hockey Association, the Youth Football Association in Nathanson in Minnesota. They're covered. The high school athletes here in Illinois, the IHSA case, covered. College athletes, that's Harvey and Matthews, they're covered. Even at the pinnacle of amateur competition in the U.S. Olympic teams, the Akiyama case, the athletes are covered up and down the levels of competition. Selectivity, after Martin, everybody holds that the players are protected. And there's no reason to think that the Inter-Illinois General Assembly intends our law to be narrower. Team Illinois attempts to distinguish Martin focusing on the size of the PGA versus Team Illinois, the marketing of the PGA. Do those distinctions make any difference? They do not, Your Honor, maybe in scale, but not in the character of the organization, right? I mean, they're still running an athletic contest at a public accommodation. The players here, in fact, are the customers of Team Illinois, right? And the idea of membership organization was raised. I want to be clear, especially as pled in the complaint, and as is true, Team Illinois is not a membership organization, right? It's not a private organization or a private club or a membership organization. It's an Illinois corporation run by Coach Larry Petrie that sells to youth and their family the chance to play hockey. This is discrimination against their customers. The players and their families are not members with any kind of control. This is not a private organization like a private country club. This is not like the Elks Club that they point to. This is, you know, it's not a club at all, in fact, because as the Ring case points out from the Eleventh Circuit, one of the inherent features of a private club is member control. So let me ask you this, because in my read of the PGA case, the Martin case, wasn't the holding there that this only applies when the organization has a significant control over the place? And so when we look at Seven Bridges in our case, how can you say they had significant control over that establishment? So three brief responses. First, the reason Martin talks about control is because the ADA only applies to the operator of a public accommodation, right? The language is narrower. Our statute applies to any person. So we don't even have to cross that threshold, and that's why they were talking about control. The second point is we plead that Team Illinois did operate Seven Bridges because it's true, right? They are permanently based at Seven Bridges. That's where the offices are. That's where the locker rooms are. They don't own it. They don't own it. They don't own it, but they have significant control. They are the house hockey team, right? This is where the practices happen. They control the ice access when they're leasing the ice. This is where their permanent locker rooms are. This is where all the activities are. So if it matters, and under our statute it's not required. We show it as an operator. If it matters, Team Illinois does have substantial control over the arena, which would be a fact question anyway. Your position is also that the statute should be given broad and liberal construction, correct? Certainly, Your Honor, and the Somerville case, right? talked about how the purpose of the Human Rights Act is to promote integration and prohibit discrimination. And we think the language is clear, but this is a question of intent. So if you go to purpose, there's no reason, there's no hint in the legislative history or the language of the act to think that the legislature wants sports teams to be able to discriminate on the basis of religion or race or disability or any other protected statute status. Counsel, let me ask you this. Who actually made the decision to bar Ms. Herself from participating in Team Illinois activities? Who actually made the decision? Two people. Coach Larry Petrie, who's the hockey director and coach at Team Illinois, and Mike Mullally at A-High. That's what's pled. It's pled directly. Together. Together, right? On one evening, Morgan and her mother talk to the coach. The next day, coach calls Larry, calls Mike Mullally, and together they decide to exclude Morgan. Together they decide on the 100 percent participation requirement. And as we've pled, it's in like paragraphs 35 to 40 in that part of the complaint, not only did Larry Petrie put in writing multiple times and say this is our standard, but Mike Mullally himself ratified even days later, said no, 100 percent participation, that's A-High standard 2. Right? And so that's the basis of the aiding and abetting, which obviously rises or falls with the Team Illinois claim. But on the point of aiding and abetting, they made the decision together, and at least at the pleading stage, that states a claim. All right. Counsel, your time is up. But does either justice have any additional questions? No. And nor do I. Thank you, Your Honor. So Mr. Weissong, at the conclusion of the Eppley's case, you will have an opportunity for rebuttal. Thank you, Your Honor. You may proceed. Good morning, Your Honors. Tim Elliott on behalf of the Eppley's. The fundamental problem that the Ursos have with this case is that they are conflating two different concepts, exclusion from the activities of Team Illinois, the organization, wherever they occur and whatever they are, and exclusion from the place of Seven Bridges. That's the problem that they have. If you read their complaint, it's very clearly what they are complaining about is their exclusion from the team. It's not limited to whatever might happen at Seven Bridges. They're mad about not being included on e-mails. They're mad about not being included in social events elsewhere. That's not what Section 5 of the Human Rights Act is intended to protect against. If Illinois wanted Section 5 of the Human Rights Act to apply to youth sports teams, to social clubs, to religious organizations, to everyone else who uses those. It clearly does apply to athletic activities in public places of accommodation, correct? It includes to those. It does. You acknowledge that counsel is correct, that it does cover players in public places of accommodation. It includes the access to the public place. Yes, I would agree with that. And in your motion to dismiss and in your brief, you admit that Morgan was excused from participation because of her condition. She had a mental health issue, correct? That's absolutely correct. Where and how can you argue that Martin, the Supreme Court's decision in PGA v. Martin, cannot be looked at for guidance? Number one, Martin is a federal case under a different statute, and here I think you have to look to what Illinois has done. In 2007, the General Assembly did look to the ADA in amending the Act, correct? They did look to the ADA, and they adopted places. And this Court has said that the Act is intended to be broadly and liberally construed, correct? That is correct as well. And Team Illinois rented seven bridges for hockey players to participate in the sport, correct? That's correct, but that therein is, I think, where the difference of degree makes a very, very significant difference. What's the degree? How does the degree make any difference at all? Somebody who rents a place on a smaller scale than the PGA can discriminate. Is that the position you're taking? They're not going to be subject to the Act. And if I could follow on a question that I think Justice Bridges raised, in Martin, when the PGA comes in, they take over the entire golf course. That is the ticket to admission to that golf course. When the PGA comes into whatever course they're holding an event, you're not getting in the door. They control the place. Many of these organizations that use spaces, public accommodations, they don't control the access. And on this, I think the Welsh case is really the informative case. That was the case that involved the Boy Scouts. And what the court said is, listen, there's lots of instances in which people use public accommodations. Think of all the instances in our life. The Rotary Club that meets at the restaurant. The church that doesn't yet have a building that meets at the public high school. Sports teams that use public parks. I mean, you could go on forever. Not every one of them can be subject to the Act. That clearly wasn't the intent of Congress at the federal level or the General Assembly. So where do you draw the line? And where the Welsh court drew the line, and what we submit is the correct place to draw the line, is they said, listen, where you have a membership organization or user of a public facility that basically is the ticket to admission to the facility, then they're under the Act. The example they gave was the YMCA. What page of your brief do you cite the Welsh case? I don't know the exact page, Your Honor. I apologize. But it's the Seventh Circuit case. We do cite it at length. I apologize. I don't have the page handy. I've read your brief. I just don't recall. But that's what we think the case is here. There's lots of people who use Severn Bridges. It's an enormous facility. This is one of many organizations that leases ice time. And like any private event at a public venue, when a particular organization is using a room or a rink, the rest of the public isn't invited. Counsel, let me ask you this. Because when I hear you talk about the Rotary having a limited function at a facility, you agree that Team Illinois barred the plaintiff from team activities. She couldn't do strength training. She couldn't practice and use the team facility. And in doing so, Team Illinois denied the plaintiff access to the Severn Bridges facility. Did they not? No. Explain why you don't believe they did that. Team Illinois deprived her of the ability to participate in the Team Illinois activities wherever they occurred, at the Severn Bridges, at a restaurant if it was a team dinner, on the team bus, or on travel, wherever they occurred. So, for example, when Team Illinois was changing in the locker room to go out on the ice, she was not, for this period of time, allowed to be there. Until she got the doctor's note, she couldn't be there. But that didn't prevent her from using any other part of Severn Bridges. It didn't preclude her from using those facilities at a time when the public was otherwise available. So, in that measure, she had the exact same rights as everyone else who was a member of the public who was not on Team Illinois. Did Team Illinois operate out of any other facilities besides Severn Bridges? They had activities at other facilities, but Mr. Weissong is correct. That's their home ice. That's where they had their practices. So, how do you dispense the argument that they can immunize themselves from discrimination claims simply by saying, you know, we don't own the facility? Is that? I don't know that they're immunized from discrimination claims. I think they're not subject to Section 5 because they are not controlling the access to the place of Severn Bridges. When Team Illinois is on the ice, so when they rank 2 from 3 to 5 on a Tuesday afternoon or whatever they did, Morgan Urso was not invited to be on the ice at that time. She can't participate in Team Illinois activities, correct? Correct. So, the fact that she didn't get in the facility, what good does that do her? That's the distinction, though, that represents the problem with their claim. Section 5 limits is places of public accommodation. It's the physical place. She was not invited to be on the ice at Team Illinois' time from 3 to 5. By the way, neither was anyone else in the public. That's the Team Illinois' use of that, right? And so, that's the distinction we draw. That's the distinction that we think the Welsh case makes very clear, and it's the distinction between an organization that provides the ticket to admission to a facility and an organization that's just simply one of many that's using a facility at a time. So, Team Illinois wanted to openly discriminate against somebody. They could do that under your theory because she's not barred from going in the facility physically. They would not have a claim under Section 5. I don't know what their claims under other statutes might be, under other provisions might be, but that is correct. Let me ask this. The Illinois Department of Human Rights dismissed plaintiff's discrimination charge based upon a lack of substantial evidence. If the department believed that Team Illinois was not subject to the Human Rights Act, wouldn't it have dismissed the case for lack of subject matter jurisdiction, as was the case in Cut and Dry, for example? No, Cut and Dry went to a higher level, and so this was just a preliminary investigation. They get what's the equivalent of a no further action letter. They got a dismissal for lack of substantial jurisdiction. Substantial evidence. It said substantial evidence, not lack of jurisdiction, so they would have dismissed it for lack of jurisdiction if Team Illinois was not covered, correct? No, I don't believe that's correct. I've seen the letter, and that was one of the reasons they dismissed it, because they had doubts about whether this was a place of public accommodation. So I don't think that is correct. During your argument on the motion to dismiss, you argued that the coach was put in a bit of a quandary. He's a youth hockey coach. He's not a mental health professional. I mean, that really wasn't applicable to the motion to dismiss, was it? That argument that went to the facts, not the allegations, not the pleadings, correct? That is correct. I think we were responding to some rhetoric that was in the complaint vilifying the coach. I think we're trying to point out all he did was say, I really need to hear from a professional on this, which is I need to hear from a doctor. Counsel, let me ask you. Since the trial court, in this case here on the motion to dismiss, must accept as true all well-pleaded facts and the reasonable inferences thereof, isn't plaintiff's allegation regarding Petrie and the guy's name from the case? Mulally. Yes. That they mutually agree to exclude her from all activities, doesn't that adequately present a claim against HIA? Aiding and abetting? So in other words, since this is dismissed, isn't that a pretty good claim that the court should have considered? Respectfully, we disagree for a couple of reasons. Number one, I think they waived that argument. They didn't raise the aiding and abetting argument in their opening brief at all. So I think it's waived. But number two, there has to be an underlying violation, which we contend did not occur. But number three, there's no allegation that Mulally did anything other than agree with the decision. They clearly alleged that Mr. Mulally agreed with the decision, told the Ursos that he agreed with the decision. There's no allegation that that empowered Team Illinois or that AHAI had any decision-making authority of any sort. This was very clearly Team Illinois' decision to make. And so we don't believe that rises to the level of substantial assistance. But, again, we're still at the pleading stage. That is correct. And the allegation should be determined liberally in favor of the plaintiff, correct? That is correct. Liberally, but within limits. Just like liberal construction of a statute has to be within the limits of what the statute actually says. You agree with the argument that the statute should be broadly and liberally construed? I agree with that argument, but there are limits. And the other thing that the Hobby Lobby case did. Reasonable limits. Right. It's constrained by the language, and the language is limited to places. And I would say again, if the General Assembly really wanted to reach all the different types of groups that meet regularly, not just incidentally, but meet regularly at a place of public accommodation, a restaurant, a community center, a gym, a theater. Well, in many of those situations, the place is not rented. It's just used temporarily by the group. You mentioned the Rotary or Chamber of Commerce. They change locations sometimes. There will be different locations, whatever is available. Here, Team Illinois was a regular user with a lease of seven bridges. That is correct. How is this case, if we can look, and I think we're obligated to consider, just as you did in your argument, the Welsh case, which is at page 26, 27, 28 of your brief. If we can look to federal case law, Martin would seem to control the outcome here. All we have to do is plug in Team Illinois for a PGA. But I would disagree for a different reason, one that was not reached by the Martin Court, and that's the private club exception, which we haven't really talked about. Even if you find... That would go to a motion to dismiss, would it not? I mean, or the factual pleading to show that it's limited? No, I would disagree with that because I think they've plugged facts that place us squarely into the private club exception. And this is where the Gilbert case, I think, even though it did not expressly arise, they did not invoke the private club exception, this is where I think they were going with that. And we don't think Gilbert is overruled. Gilbert was essentially saying the problem we have with the scuba school is it's actually not open to everybody. It's open only to certain people. It's certain people that meet certain requirements. So it doesn't really rise to the level of place of public accommodation. Here, there's no dispute. They allege it. Team Illinois is a selective, selective organization. It's the highest level of hockey in Illinois. I don't know if that comes through at the papers, but the level that Morgan Urso was playing at, there's only a couple teams in the state that play at that level. I mean, you've got people going to the Olympic teams that have played at that level. There's competitive tryouts. You have to meet the rigorous standards. If an athlete meets the competition level and then you're excluded after you've met all the requirements, that's not discrimination? You're excluded for some disability? You're saying that that's not discrimination under the Act? I'm saying it's not discrimination under the Act because it falls under the private club exception. Section 5, because it's limited to places. And that's the language that they're stuck with. It's limited to deprivation of a place. It doesn't apply to a private club. And in this case, they've pled themselves into the private club exception by emphasizing how selective and competitive this program is. Unless, Your Honor, you have any questions? Does either Justice have any additional questions? I don't. No, Your Honor. Thank you. Just three brief points, Your Honor, unless you have questions. First, you're correct, the private club issue is an affirmative defense. We've set out why we don't think it's meritorious, but it's not proper on a motion to dismiss anyway. Second point is the defendant makes a big argument about the fact that Morgan could go to some other part of Seven Bridges. But that's not what the Act says, right? The Act doesn't guarantee some access to a public accommodation. It guarantees full and equal access. So that's no defense that she could skate at some other time or go to the shop and buy materials. And the third point I'd make is the test is not whether an organization is a ticket to admission, right? Key fact here is that Team Illinois is offering to the public the opportunity to skate and play on the hockey team. They are offering to the public the hockey game, right? And that's the key. When you are an organization, through your relationship with the public accommodation, opening to public opportunity to the services or space, that brings you within the Act. If you have any further questions, I'm happy to address them. Do you have any additional questions? Thank you, Your Honors. Nor do I. The Court at this time thanks both parties for their arguments this morning. We reviewed the briefs and well done. The arguments were well done and focused. So we thank you for that. We will take this case under advisement and a disposition will be rendered in due course.